UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REINER JOSE LEAL BETANCOURT,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, et al.,<br><br>Respondents. | Case No.: 26cv764-LL-SBC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Reiner Jose Leal Betancourt's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response [ECF No. 3, ("Ret.")], and Petitioner filed a Traverse [ECF No. 4]. For the reasons set forth below, the Court **GRANTS** the Petition.

**I.    BACKGROUND**

Petitioner is a citizen of Venezuela. Pet. ¶ 38. Petitioner alleges that he was a lieutenant in Venezuela's National Guard and was detained, beaten, and tortured by the Venezuelan government. *Id*. ¶ 2. On January 17, 2025, Petitioner arrived at the port of entry and was granted humanitarian parole. Pet. ¶ 40, ECF No. 1-2. On the same day, Respondents commenced removal proceedings against Petitioner. Pet. ¶ 41. On February

21, 2025, Petitioner filed his asylum application. *Id*. ¶ 3. At his master calendar hearing on May 21, 2025, counsel for Department of Homeland Security ("DHS") made a "motion to dismiss his removal proceedings," without any prior notice, and the motion was granted. *Id*. ¶ 44. As Petitioner exited the courtroom, he was surrounded by "masked, armed ICE agents" and was arrested. *Id*. Petitioner alleges that he was not "given any written notice that his parole was being terminated" nor told "how or why a determination had been made that he was now deemed a flight risk and/or a danger to society." *Id*. ¶ 6. Respondents claim that DHS issued and served on Petitioner, a Notice to Appear at the time of re-detention. Ret. at 1–2.

Petitioner argues that his detention violates the Administrative Procedures Act and the Due Process Clause of the Fifth Amendment, Pet ¶¶ 51–70. Petitioner seeks a writ of habeas corpus directing Respondents to, *inter alia*, release him from custody. *Id.* at 18.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

## III. DISCUSSION

Petitioner argues that the summary revocation of his parole without notice or a hearing violate the Due Process Clause and the Administrative Procedure Act. Pet. ¶¶ 51–70. Respondents do not directly address Petitioner's claims, instead argue that Petitioner's claims and requested relief are jurisdictionally barred and that Petitioner is lawfully

detained under 8 U.S.C. § 1225. Because the Court finds that Petitioner's due process claim is meritorious and justifies Petitioner's release, the Court will only address this claim in this Order.

### A. Jurisdiction

Respondents first argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(g). Ret. at 2–3. The Court disagrees. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Petitioner's claims "arise from his detention during removal proceedings, which stem from the Attorney General's decision to commence such proceedings." Ret. at 3.

However, "[t]he Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (noting that courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not."). In fact, the Supreme Court has previously rejected as "implausible" Respondents' suggestion that § 1252(g) covers "all claims arising from deportation proceedings" or imposes "a general jurisdictional limitation." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citing *Reno.*, 525 U.S. at 482.) In other words, §1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez*, 154 F.4th at 997. Specifically, §1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). "[The petitioner's] objective was not to obtain judicial review of the merits of their [] proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052.

1 Here, the Court agrees with the Petitioner that Petitioner is not challenging the decision to commence proceedings. Rather, Petitioner is challenging "the legality of the revocation of humanitarian parole in violation of the law and dismissal of ongoing removal proceedings without due process." *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *6 (S.D. Cal. Oct. 1, 2025) (holding that a decision to detain Petitioner does not fall within the three discrete actions identified in § 1252(g) and thus does not deprive court's jurisdiction). Thus, § 1252(g) does not bar Petitioner's claims.

Moreover, Respondents' jurisdictional arguments on § 1252(b)(9) also fail when considered in the broader context of the statutory provisions. Specifically, the jurisdiction-stripping provisions of 8 U.S.C. § 1252 apply over *final* order of removal. *See* 8 U.S.C. § 1252(b)(9); *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007) ("[T]he entire section is focused on orders of removal."); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006) ("By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal."). Where a petitioner "does not challenge any final order of removal, but challenges his *detention* prior to the issuance of any such order" the jurisdiction-stripping provisions do not apply. *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008). Thus, given Petitioner is challenging his detention prior to the issuance of any final order, this Court retains jurisdiction. Accordingly, this Court has jurisdiction to consider Petitioner's claims.

B. **Fifth Amendment Due Process**

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The Court finds that having been previously released on humanitarian parole, Petitioner has a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Here, Petitioner alleges that he was detained without any written notice or opportunity to be heard as to why his parole was terminated prior to being arrested and detained. Pet. ¶ 6. Respondents claim that the termination of Petitioner's parole was "within DHS's discretion" and that the service of NTA "served to terminate his parole status." Ret. at 4. However, Respondents provided no explanation for terminating Petitioner's parole.

The Court finds that all three factors support a finding that DHS's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. *See Pinchi*, 792 F. Supp.

3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. After the initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, Respondents have not produced any argument or evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is no indication that Petitioner has failed to abide by the conditions of his release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC),

2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

Therefore, because Respondents detained Petitioner by revoking his parole without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful.[1] *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful). The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori*, 2025 WL 2800149, at *1 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Sanchez*, 2025 WL 2770629, at *5 (same); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

---

[1] Because the Petition can be resolved on these due process grounds, the Court declines to reach Petitioner's claims of APA violation. However, the Court notes that other courts have found violations of the APA in similar circumstances. *See, e.g.*, *Noori v. LaRose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *3, 13 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez*, 2025 WL 2770629, at *4 (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

Accordingly, the Court **GRANTS** Petitioner's Petition.[2]

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] and **ORDERS** that Respondents immediately release Petitioner from custody subject only to the conditions of his preexisting parole. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: February 24, 2026

_____
Honorable Linda Lopez
United States District Judge

---

[2] In his prayer for relief, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act, which the Court **DENIES without prejudice**. Pet. at 18.